# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| BRENDA L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant.[2] | No. 5:25-cv-00757-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Brenda L. appeals the ALJ's decision denying her claims for Social Security disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Court affirms the ALJ's decision.

## I. BACKGROUND

Plaintiff applied for benefits in 2021, alleging disability beginning March

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Leland Dudek as Defendant in this action.

14, 2012. See Dkt. 9, Administrative Record ("AR") 212-15.[3] Plaintiff's date last insured is December 31, 2016. See AR 22. Plaintiff's claims were denied initially on January 10, 2022, see AR 95-98, and upon reconsideration on October 6, 2022, see AR 101-05. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and received a hearing on November 8, 2023. See AR 22, 43-69. The ALJ issued an unfavorable decision on February 26, 2024. See AR 19-35.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. See AR 24. At step two, the ALJ found that through the date last insured, Plaintiff had the severe impairments of "major depressive disorder and generalized anxiety disorder." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 25.

The ALJ found that through her date last insured, Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out detailed but not complex instructions; she can occasionally interact with supervisors and coworkers, but no tandem or teamwork; she is to have no interactions with the public, but contact is permissible; she can occasionally deal with changes in a routine work setting; she is to have no exposure to moving mechanical parts and high exposed

---

[3] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

places; and she is limited to a work environment with moderate noise level as defined in the Selected Characteristics of Occupation." AR 28. At step four, the ALJ found that through her date last insured, Plaintiff was unable to perform her past relevant work as a recreational leader. See AR 33.

At step five, the ALJ relied on the testimony of a vocational expert to conclude that through her date last insured and considering her age, education, work experience, and RFC, Plaintiff could perform jobs that exist in the national economy, such as automobile detailer, store laborer, and industrial cleaner. See AR 34. Accordingly, the ALJ denied benefits. See AR 34-35.

The Appeals Council denied review of the ALJ's decision. See AR 1-3. Plaintiff then sought judicial review. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based upon legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (citation omitted) (cleaned up). "Substantial" means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 103, 108. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

### III. DISCUSSION

The parties dispute whether the ALJ: (1) permissibly discounted Plaintiff's testimony and (2) properly supported her RFC. See Dkt. 13, Plaintiff's Brief ("Pl.'s Br."); Dkt. 17, Defendant's Brief ("Def.'s Br.").

#### A. Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ impermissibly rejected her subjective symptom testimony. See Pl.'s Br at 10-21. More specifically, Plaintiff argues that the ALJ did not offer a sufficient rationale for rejecting her testimony and failed to connect specific portions of Plaintiff's testimony to the record. See id.

The Commissioner argues that the ALJ reasonably discounted Plaintiff's self-reports because of inconsistencies between Plaintiff's claims and other evidence, including her activity level, the objective findings, and evidence showing that her symptoms improved with conservative treatment. See Def.'s Br. at 7-12. The Commissioner also argues that "courts must affirm so long as the ALJ's rationale can 'reasonably be discerned,' which is exactly the case here." See id. at 12 (internal citation omitted). As discussed below, the Commissioner has the better argument.

##### 1. Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged she was disabled due to anxiety, depression, Parkinson's, and diabetes. She testified that she had no idea that they were unhappy with her performance at work, she returned from FMLA, got written up, retrained, then terminated. She stated that she stayed in bed all the time, she could not get up, but she did get up when she had to. She explained that she disliked crowds and could not deal; after her termination she became stay at home mom for daughter; she functioned but did the minimum, she drove daughter to games, but would wait in the car because she did

>  not like crowds. She indicated that she did not look for other work due to being very depressed.

AR 29 (internal citation to the record omitted). The ALJ accepted Plaintiff's testimony only "to the extent her testimony is consistent with the conclusion she can do the work described herein." AR 28-29.

### 2. Applicable Law

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted). At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). Then, provided "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Garrison, 759 F.3d at 1014-15 (internal quotation marks and citation omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (citation omitted).

"If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted); see also Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that

5

it has the power to convince.").

### 3. Analysis

The ALJ discounted Plaintiff's testimony at the second step, finding Plaintiff's statements about the alleged intensity, persistence, and limiting effects of her symptoms inconsistent with the evidence of record. See AR 28-33.

To start, the Court notes that the ALJ apparently did not reject Plaintiff's testimony in full but instead found it "not entirely" consistent with the evidence and so constrained Plaintiff's RFC to work with specified limitations. See AR 28, 30, 33. Those determinations credited Plaintiff's subjective complaints in part. See id. To the extent the ALJ did not fully credit Plaintiff's complaints, the ALJ provided sufficient reasons for doing so. See AR 28-33.

For one, the ALJ discussed how Plaintiff's statements were out of step with her treatment records. See AR 30-31. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Smartt, 53 F.4th at 499 (citation omitted). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis." Burch, 400 at 681; see also Smartt, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

Here, the ALJ reasonably discounted Plaintiff's testimony as inconsistent with the effectiveness of her treatment and the objective medical evidence. The ALJ went through years of records, noting that "mental status evaluations by [Plaintiff's] medical providers were within normal limits" and "[f]indings from mental status examinations from the alleged onset date through the date last insured included generally unremarkable findings." AR 30-32. The ALJ referred to records from each year of the relevant period

documenting Plaintiff's mood as "euthymic" or "stable." Id. The ALJ also referred to records documenting Plaintiff's "mild depression with sleep disturbances on October 29, 2012" and that Plaintiff "reported trouble at home related to her adopted daughter on January 28, 2015, but her mood had been stable, she was sleeping okay, had an interest in a social life with good concentration, and had been compliant with medication with no significant side effects." AR 30.

The ALJ further noted that Plaintiff received mostly routine, conservative, and non-emergency treatment and "did not engage in any formal mental health treatment prior to the date last insured." AR 30.[4] The ALJ noted that Plaintiff's diagnoses were "well controlled on medication" on dates throughout the relevant period. See id. For individuals with mental health disorders, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." (citations omitted)). Thus, the ALJ reasonably discounted Plaintiff's testimony based on her effective treatment.

Plaintiff argues that the ALJ failed to connect Plaintiff's testimony and

---

[4] To the extent the ALJ concluded that Plaintiff's use of medication to treat her alleged symptoms was "conservative," courts in this district have rejected this characterization. See Gary W. B. v. Saul, No. 18-02355, 2019 WL 4860933, at *8 (C.D. Cal. Oct. 2, 2019) (collecting cases). However, as discussed above, the ALJ cited evidence showing that Plaintiff's anxiety and depression were "well controlled on medication" during the relevant period. See, e.g., AR 30. Thus, while the ALJ may have mischaracterized Plaintiff's treatment, the Court concludes that any such error was harmless as to the ALJ's overall assessment of Plaintiff's credibility.

7

the medical evidence, but ALJs are neither required "to perform a line-by-line exegesis of the claimant's testimony" nor "to draft dissertations when denying benefits." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted). Here, while the ALJ could have been more meticulous, her path is discernible and the Court can meaningfully review her reasons. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." (internal quotation marks and citations omitted)), superseded by regulation on other grounds 20 C.F.R. § 404.1502; see also Guthrie v. Kijakazi, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting argument that ALJ erred in "failing to clearly identify" which portions of plaintiff's symptom testimony she rejected and "failing to link her rejection of that testimony to the record evidence," finding that ALJ "sufficiently explained her reasons" for discounting plaintiff's testimony and the court "can easily follow her reasoning and meaningfully review those reasons").

     Separate and apart from the medical evidence, the ALJ also found that Plaintiff's daily activities were inconsistent with her subjective symptom testimony. See AR 29, 31. The ALJ found that "[p]rior to the date last insured, despite the alleged impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction." AR 29. Plaintiff argues that her "descriptions of activity levels in her testimony are far short of what is needed to demonstrate capacity to perform work activity on a sustained basis." Pl.'s Br. at 17.

     "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (citation omitted). Here, Plaintiff reported that she engaged in the following daily activities: attend

8

appointments; craft at home, including sewing blankets and leather crafting; maintain her personal care; feed and clean up after pets; prepare meals; clean her house; do laundry; hose/water down the patio and porch; drive a car; ride in a car; shop in stores and by mail; handle a savings account; use a checkbook/money order; spend time with others in-person and by communicating via email, text message, and video chat; watch television with her husband; and lunch with her girlfriends, dinner with family members once or twice a week. See AR 259-62. Plaintiff's husband reported that she engaged in similar activities. See AR 270-77.

     The ALJ found that Plaintiff's daily activities were inconsistent with her statements, specifically noting "that the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment." AR 29. While the record evidence could be interpreted more favorably for Plaintiff, the ALJ's interpretation is rational and the Court must uphold the ALJ's interpretation when the evidence is susceptible to more than one rational interpretation. See Burch, 400 F.3d at 680-81.

     In sum, the ALJ summarized Plaintiff's statements, concluded that Plaintiff's statements were "not entirely consistent" with the record evidence, and provided sufficiently specific reasons, supported by "substantial evidence," to allow this Court to conduct meaningful review. Accordingly, the ALJ did not err. See Molina, 674 F.3d at 1121.

     Remand or reversal is not warranted on this basis.

**B.**    **Plaintiff's RFC**

     Plaintiff argues that the ALJ erred in assessing limitations in the RFC that are not supported by substantial medical evidence. See Pl.'s Br. at 22-28. More specifically, Plaintiff argues that the ALJ rejected all the medical opinion evidence and had no clear medical basis for her RFC. See id. The

Commissioner argues that the ALJ's RFC is reasonable and supported by substantial evidence. See Def.'s Br. at 12-17. Again, the Commissioner has the better argument.

### 1. RFC

The ALJ found that Plaintiff had the severe impairments of "major depressive disorder and generalized anxiety disorder." AR 24. When determining whether Plaintiff's impairments met or medically equaled a listing at step two, the ALJ considered four functional areas, known as the "paragraph B" criteria due to how they are categorized in the listings. See AR 25-28.[5] The ALJ found that Plaintiff had a mild limitation in "adapting or managing oneself" and moderate limitations in "interacting with others" and "concentrating, persisting, or maintaining pace." AR 26-27.

As for medical opinions and prior administrative medical findings, the ALJ found "partially persuasive" the prior administrative medical findings of the State agency review physicians who, upon initial review, opined insufficient evidence for a residual functional capacity opinion and, upon reconsideration, opined no severe limitations. See AR 31 (citing AR 70-80, 82-93). The ALJ rejected as "unpersuasive" the prior administrative medical findings of the State agency review psychologists "who opined no severe mental limitations." AR 32-33 (citing AR 70-80, 82-93). While the ALJ found that "this is not an impossible conclusion to reach, on balance the evidence does reflect some degree of limitation." 32-33 (citations to the record omitted).

---

[5] The limitations identified in the paragraph B criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . ." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

The ALJ also rejected as "unpersuasive" the opinions of Plaintiff's medical sources. See AR 32. Ultimately, the ALJ declined to "defer or adopt any prior administrative medical findings or medical opinions." See AR 31.

Ultimately, the ALJ found that "through the date last insured, [Plaintiff] had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out detailed but not complex instructions; she can occasionally interact with supervisors and coworkers, but no tandem or teamwork; she is to have no interactions with the public, but contact is permissible; she can occasionally deal with changes in a routine work setting; she is to have no exposure to moving mechanical parts and high exposed places; and she is limited to a work environment with moderate noise level as defined in the Selected Characteristics of Occupation." AR 28.

### 2. Applicable Law

A claimant's RFC is the most a claimant can still do despite their limitations. See 20 C.F.R. § 404.1545(a). An RFC assessment is an "administrative finding." See SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is the ALJ's responsibility to assess RFC. See 20 C.F.R. § 404.1546(c). In determining a claimant's RFC, an ALJ will consider all relevant evidence and all of the claimant's medically determinable impairments. See 20 C.F.R. § 404.1545(a).

Plaintiff applied for benefits after March 27, 2017, the effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence. See 20 C.F.R. § 404.1520c. "For claims subject to the new regulations, the former hierarchy of medical opinions . . . no longer applies." Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022). "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." Id.

3. **Analysis**

It is the ALJ's province to determine the RFC assessment. See 20 C.F.R. § 404.1546. The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. See 20 C.F.R. 404.1545(a)(1). Here, the ALJ validly synthesized the record when formulating her RFC assessment. Notably, the ALJ assessed limitations more restrictive than the state agency review psychologists. Compare AR 28, 32-33, with AR 70-80, 82-93. A plaintiff cannot fault the ALJ for assessing an RFC that is better than most of the medical opinions in the record. See Mills v. Comm'r of Soc. Sec., No. 13-0899, 2014 WL 4195012, at *4, n.8 (E.D. Cal. Aug. 22, 2014) ("Indeed, plaintiff can hardly fault the ALJ for giving [her] the benefit of the doubt and assessing an RFC that is more favorable to plaintiff than most of the medical opinions in the record.").

Moreover, it appears that Plaintiff neither challenges the ALJ's assessment of any particular opinion nor details what additional limitations Plaintiff believes should have been included in the RFC. The Ninth Circuit has rejected "any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692, n.2 (9th Cir. 2000). So too does this Court.

Remand or reversal is not warranted on this basis.

## IV. CONCLUSION

This decision of the Commissioner is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: December 1, 2025

DOUGLAS F. McCORMICK
United States Magistrate Judge

13